REQUESTED BY: Michael J. Linder, Director,
 Nebraska Department of Environmental Quality (NDEQ)
QUESTIONS: 1. Are scrap tires that are mechanically formed into a bale and bound with wire or other similar material considered to be "waste tires," which are prohibited from "land disposal" under Neb. Rev. Stat. § 13-2039(3)(a)?
 2. If such baled tires are not "waste tires" but rather a product, do the statutes provide the department with authority or responsibility to regulate the minimum design and acceptable use of tire bales to ensure that they retain their status as a product?
 3. If such baled tires are "waste tires," is there authority under the statutes to regulate types of uses that, if properly engineered, would not be considered "land disposal"?
CONCLUSIONS: 1. The prohibition against land disposal of waste tires would preclude discarding baled tires in a landfill. It is not believed it would preclude the placement of baled tires on the land if the bales were genuinely intended for and serving some beneficial purpose, as the bales would not be "waste" and their placement might not be considered "disposal."
 2. 3. It is believed the Environmental Quality Council has authority to promulgate rules, administered by NDEQ, which describe the kind of bale construction which would make the person placing such a bale eligible for a dumping/disposal permit or which may make the placement of such tire bales exempt from permit requirements.
As you pointed out in your inquiry letter, the Integrated Solid Waste Management Act presently prohibits the "land disposal of waste tires in any form." Neb. Rev. Stat. § 13-2039(3)(b) (1997). However, we do not believe that this would preclude using tire bales such as you have described, where such bales would have some beneficial use in a civil engineering application. The prohibition of section 13-2039(3)(b) needs to be read in context. The immediately preceding subparagraph indicates that prior to September 1998, land disposal of waste tires was only prohibited if the tires had not been processed in accordance with NDEQ requirements, and that landfills could not refuse waste tires which had been properly processed. This suggests that the focus was upon trash taken to the dump and that the words "in any form" was intended to ensure that scrap tires, even if they met the processing requirements applicable prior to that date, would not continue to be accepted at landfills.
It may be that the Act would be interpreted more broadly to encompass disposal outside of landfills, too, but we do not believe one needs to answer this question in order to answer yours. According to the Act, it is the policy of the state to encourage waste volume reduction and recycling and to support and encourage the development of new uses and markets for recycled goods. Neb. Rev. Stat. § 13-2017 (1997). When interpreting the meaning of a law, a court is to look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. In re Estate of Sutherlin, 261 Neb. 297, 300-01, 622 N.W.2d 657, 661
(2001); Battle Creek State Bank v. Haake, 255 Neb. 666, 587 N.W.2d 83
(1998). From your letter we understand that these baled tires have a genuine, beneficial use. As evidence of this, pursuant to its authority under the Waste Reduction and Recycling Incentive Act, Neb. Rev. Stat. § 81-15,158.01 et seq. (1999), your Department has in the past considered providing financial support to projects which used baled tires in civil engineering applications. Consequently, where the tires are baled for these or similarly beneficial uses, we do not believe the prohibition against land disposal of waste tires would be read to bar such uses. It may be that the tires would lose their character as waste tires once they were baled or that placing them in use would not be considered disposal.
Also, in explaining why it set up the Waste Reduction and Recycling Incentive Act, the Legislature declared that scrap tires can be recycled or processed for many uses and that this recycling should be encouraged as this was an important component of the State's overall waste management system. Neb. Rev. Stat. § 81-15,159.01(1) (1999). Although at least some of the provisions of that Act have expired, it is unlikely that the Legislature's rationale for adopting the Act has. To read the prohibition of Neb. Rev. Stat. § 13-2039(3)(a) as being applicable to baled tires intended for some genuine, beneficial use would seem to run counter to the Legislature's expressed will.
Of course, trash does not cease to be trash simply by bundling it up with more trash. Bundling a scrap tire with other scrap tires does not change its chemical or fundamental structure. Even when bundled, it would still be considered a scrap or waste tire if it is being discarded. Its definition, or the characterization of its placement, may change depending upon what is being done with it. Just as one man's trash may be another man's treasure, one man's treasure may be another man's trash.
You pointed out that the Waste Reduction and Recycling Act expressly excluded baled tires (along with tire-derived fuel and crumb rubber which wasn't intended for some end use) from the definition of "tire derived product," perhaps suggesting the implication that the Legislature did not want to encourage this particular application, but, as you also noted, the Legislature did financially support the use of scrap tires for civil engineering applications for specified projects, some of which included baled tires. It may be that the exclusion of baled tires from the definition merely reflected a decision that state financial support for plant construction or manufacturing costs should be restricted to projects with more novel or complex technology. The omission of baled tires from the definition of tire-derived products did not preclude all funding for projects involving baled tires.
You have also inquired about the Department's authority to regulate the design and use of tire bales, depending upon whether the baled tires are considered waste tires. We believe the Environmental Quality Council would have such authority. We primarily rely upon Neb. Rev. Stat. §13-2033(1) (1997). It prohibits dumping solid wastes at other than an approved landfill, absent a permit. Any provision for a permit is to be rooted in regulations established by the Environmental Quality Council. It goes on to authorize the Council to adopt regulations which exempt the use of dirt, stone, and brick for fill, landscaping, or grading purposes and which exempt the placement of tires or certain other objects for the purpose of bank or blowout stabilization. Notably, the fill dirt or tires must still be considered to be solid wastes subject to regulation, despite the fact they are serving some beneficial use, as one apparently has to get a permit unless the Council has exempted the activity. Not too dissimilar from what appears to be presented with the tire bales, the specified materials were relatively unchanged from the condition they were in when they ceased to serve their original purpose, and what was being done with them — fill dirt or blowout stabilization — resembles what one might expect to be done with discarded materials. Since tire bales are comprised of scrap tires, a solid waste, we believe the Council may adopt rules which condition the granting of a 13-2033
permit upon the design of the tire bales and the use to be made of them, assuming that there is an environmental basis for such regulations. Neb. Rev. Stat. § 13-2033 also permits the Council to make exemption from the permit requirement for "such other waste placement or depositing activities that are found not to pose a threat to the public health or welfare." This gives the Council another means to control the construction of the bales and their placement, as the Council could exempt from the permit requirement only those bales which meet the Council's environmentally rooted design and siting standards.
Sincerely,
 DON STENBERG Attorney General
 Mark D. Starr Assistant Attorney General
Approved by:
_____________________________ Attorney General